IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| KENDRA DENISE WARD, | |
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. 3:25-cv-00159-TES |
| HARBOR FREIGHT TOOLS USA, INC., | |
| *Defendant*. | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

The pending motion to dismiss asks the Court to decide whether the 180-day limitations period set forth in 42 U.S.C. § 2000e-5(e)(1) bars a retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

To spare you the suspense, it doesn't. Well, at least not on the current record.

## PROCEDURAL BACKGROUND

Using the Court's standard form for complaints in civil cases, Plaintiff Kendra Denise Ward initiated this lawsuit against Defendant Harbor Freight Tools USA, Inc., by hand delivering her complaint and a motion for leave to proceed *in forma pauperis* to the Clerk of Court. [Doc. 1]; [Doc. 2]. Although she signed her complaint on October 1, 2025, she didn't physically hand it to the Clerk for filing until October 6, 2025, and under the Federal Rules of Civil Procedure, a civil action is not commenced until a

plaintiff *files* a complaint with the Court. Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); [Doc. 1, pp. 1, 5]. In granting Plaintiff leave to proceed *in forma pauperis*, the Court undertook a preliminary review of her complaint, and as pled, what she used to support her various claims were "no[thing] more than [legal] conclusions." 28 U.S.C. § 1915(e); [Doc. 4, p. 9 (quoting *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018))]. "Mindful that even a without-prejudice dismissal"—based on her conclusory pleading practices—"would act as a dismissal with prejudice" because of § 2000e-5(e)(1)'s strict limitations period, the Court ordered her to recast her complaint. [Doc. 4, p. 9 (citing *Powell v. Siegal*, 447 F. App'x 92, 94 (11th Cir. 2011))].

In the midst of seeking and receiving an extension of time to recast her complaint until "on or before November 24, 2025," Plaintiff obtained permission to file her papers electronically. [Doc. 5]; [Doc. 6]; [Doc. 7]. Albeit one day late, Plaintiff electronically filed her recast complaint on November 25, 2025. [Doc. 8]. Overlooking that slight delay, the Court reviewed her recast compliant now asserting *one* claim—a claim for retaliation under Title VII—and it ordered a United States marshal to serve Harbor Freight. [*Id.* at p. 8]; [Doc. 9, p. 2 (citing Fed. R. Civ. P. 4(c)(3))]. Following service on January 21, 2026, Harbor Freight moved to dismiss on February 11, 2026, arguing that § 2000e-5(e)(1) bars Plaintiff's retaliation claim. [Doc. 11]; [Doc. 16]; [Doc. 16-1, p. 4 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002))]. In lieu of opposing Harbor Freight's efforts to dismiss her claim, Plaintiff filed an amended complaint.

2

[Doc. 18]. Since, however, Plaintiff couldn't amend her recast complaint "as a matter of course" under Rule 15(a)(1), the Court construed the amended complaint as a motion for leave to amend under Rule 15(a)(2). Fed. R. Civ. P. 15(a); [Doc. 19, pp. 1–2]. With leave to amend granted, the Court simultaneously mooted the motion to dismiss Harbor Freight filed on February 11, 2026, because "an amended complaint supersedes the [earlier] complaint and becomes the operative pleading in the case." [Doc. 19, p. 3 (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007))]. Then, on March 19, 2026, Harbor Freight filed its renewed motion to dismiss arguing—you guessed it—that § 2000e-5(e)(1) bars Plaintiff's retaliation claim. [Doc. 20]; [Doc. 20-1]. The next day, the Court issued a courtesy notice to Plaintiff informing her "of what may happen to her case if she fails to file a response brief." [Doc. 21, p. 1]. On April 9, 2026, Plaintiff filed a response brief, and on April 17, 2026, Harbor Freight filed its reply. [Doc. 22]; [Doc. 24].

Although there are three pleadings in this case—a complaint, a recast complaint, and an amended complaint, only one is operative. *Lowery*, 483 F.3d at 1219; [Doc. 1]; [Doc. 8]; [Doc. 18]. Since, as previously discussed by the Court, Plaintiff's amended complaint does not incorporate either of her prior pleadings, those pleadings are abandoned and are "no longer a part of [her] averments against" Harbor Freight. [Doc. 19, pp. 3–4 (citing *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006))]. Put simply, what Plaintiff alleged in her complaint and her recast complaint

3

against Harbor Freight no longer matters, and the Court looked to her amended complaint in deciding the motion currently before it. *See Hoefling v. City of Mia.*, 811 F.3d 1271, 1277 (11th Cir. 2016) (holding, an earlier pleading "became a legal nullity" once "wholly superseded" by an amendment).

## LEGAL STANDARDS

Rule 12(b)(6), the rule on which Harbor Freight bases its motion to dismiss, must be read in conjunction with the pleading rules set forth in Rule 8. [Doc. 20, p. 1]; [Doc. 20-1, pp. 3–4]. Speaking in terms of factual allegations, Rule 8 requires a pleading to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court reads Rule 8(a)(2) to require that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[E]ven if doubtful," courts must follow the cardinal rule of accepting well-pleaded facts alleged in a complaint as true. *Twombly*, 550 U.S. at 555–56; *Iqbal*, 556 U.S. at 678; *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n.1 (2002). In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to the plaintiff. *See Andre v. Clayton Cnty., Ga.*, 148 F.4th 1282, 1291 (11th Cir. 2025).

Then, speaking in terms of dismissals for failure to state a claim on statute of limitations grounds, as relevant to Harbor Freight's motion, those are appropriate only

where it is apparent from the face of the operative complaint that a claim is time-barred. *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1296 (11th Cir. 2021); *see also Winston v. Walsh*, No. 5:19-cv-00070-TES, 2019 WL 3068451, at *3 (M.D. Ga. July 12, 2019) (quoting *Bhd. of Locomotive Eng'rs v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008)). "This is because [a] statute of limitations bar is an affirmative defense," and a plaintiff is "not required to negate an affirmative defense in [a] complaint." *Winston*, 2019 WL 3068451, at *3 (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). Generally, all that's required of a plaintiff in a complaint is a short and sweet allegation that "all conditions precedent have occurred or been performed." *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982) (quoting Fed. R. Civ. P. 9(c)); *see, e.g.*, [Doc. 18, ¶ 10 (Plaintiff's allegation in her amended complaint that "[a]ll conditions precedent to invoke the jurisdiction of this Court under Title VII have been met.")]. Where, however, a defendant "timely raise[s]" this affirmative defense to a particular claim, district courts can dismiss that claim under Rule 12(b)(6). *Dewein v. McDonald*, No. 1:16cv261-MW/GRJ, 2017 WL 11727744, at *2 (N.D. Fla. Jan. 3, 2017) (citing *Okpala v. Drew*, 248 F. App'x 72, 73 (11th Cir. 2007)); *see also Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 543–44 (2019) (holding, "Title VII's charge-filing instruction is not jurisdictional" and "must be timely raised to come into play"); [Doc. 20-1, p. 2].

To be clear, district courts may also properly dismiss a claim sua sponte, without requiring any responsive pleadings, for failure to state a claim if the claim would be

barred by an applicable limitations period. *Simpson v. Florida*, 708 F. App'x 635, 636 (11th Cir. 2018) (holding, in the context of cases brought under 42 U.S.C. § 1983, that district courts may dismiss actions sua sponte when barred by a state's statute of limitations). Although the Court possesses the authority to dismiss Plaintiff's retaliation claim sua sponte—had it been "apparent" from the face of her amended complaint that Title VII's limitations period bars it—Harbor Freight has nonetheless timely raised the affirmative defense itself. *Fort Bend Cnty.*, 587 U.S. at 543; *Bhd. of Locomotive Eng'rs*, 522 F.3d at 1194.

In pro se actions, courts must also construe complaints more liberally than they would those drafted by a lawyer. *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980); *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). Even though the impending factual background is largely comprised of quoted language from Plaintiff's amended complaint, the Court is, of course, cognizant of the leniency she's afforded when it comes to alleging facts. That said, pro se litigants are not exempt from complying with the Federal Rules of Civil Procedure, including Rule 8(a)(2)'s pleading standard. *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet[,] even in the case of *pro se* litigants[,] this leniency does not give a court license to serve as *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action[.]") (internal citations omitted), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 706 (11th Cir. 2010); *see also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (stating

6

that pro se litigants are "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure").

Lastly, under the incorporation-by-reference doctrine, district courts may consider evidence vis-à-vis to a motion to dismiss without converting the motion into one for summary judgment if "*the plaintiff* refers to certain documents in the complaint," those documents are "central to [a] claim," and the documents' contents are undisputed. *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023) (quoting *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)) (emphasis added). "Evidence is 'undisputed' in this context if its authenticity is unchallenged." *Id.* (citing *Horsley*, 304 F.3d at 1134). More on this, later, though.

## FACTUAL BACKGROUND

With Harbor Freight's arguments that Plaintiff's retaliation claim is time-barred by § 2000e-5(e)(1), the specific facts she relies upon to support that claim may seem less than relevant. Nevertheless, the Court provides a full factual rundown for clarity of the timeliness issue before it.

To start, Plaintiff is an African American female, and from March 6, 2018, to February 25, 2024, she worked as a full-time sales associate at the Harbor Freight store in Madison, Georgia. [Doc. 18, ¶¶ 3, 11]. "[I]n the first year or so," Plaintiff admits she had "a few hiccups maneuvering her duties as a newer associate," but ultimately, she "emerged as a stellar performer." [*Id.* at ¶ 13]. Her annual performance evaluation from

7

May 2023 led to a favorable review with comments about how much of a team player she was and how she did her part to make sure the store met its daily goals. [*Id.*]. In July 2023, Plaintiff received a four percent raise. [*Id.* at ¶ 15]. In December 2023, she received a $.67 raise. [*Id.*].

"Over the course of time," Plaintiff alleges she began "to observe and experience what she perceived as inequitable, racial[,] and sexual[ly] discriminatory treatment." [*Id.* at ¶ 16]. She claims the inequitable treatment consisted of different standards for black females and their white counterparts for things like scheduling, phone use while on duty, and professional behavior. [*Id.* at ¶¶ 17–18]. Then, in July 2023, Plaintiff says that things "drastically" changed when a male supervisor allegedly "first touched her inappropriately" and gave her an inappropriate cartoon. [*Id.* at ¶ 19]. According to Plaintiff's amended complaint, this supervisor made her work environment "uncomfortable" through "repeated physical contact, inappropriate statements, and inappropriate gestures like unsolicited gifts and invitations to come to [his] home." [*Id.*].

From July through October 2023, Plaintiff alleges that she made several reports to management about her supervisor's alleged harassment but "was forced" to work alone with him. [*Id.* at ¶ 21]. Despite her reports to management, Plaintiff claims "she did not experience any relief from her [s]upervisor's harassment," prompting her to first initiate contact with the Equal Employment Opportunity Commission ("EEOC") on October 24, 2023. [*Id.* at ¶¶ 21, 23]. Plaintiff claims she informed management of her outreach to the

8

EEOC. [*Id.*]. Then, Plaintiff states that she "finalized and filed" an initial charge of discrimination with the EEOC on December 12, 2023. [*Id.* at ¶ 25]. "Just days later," however, Plaintiff says she "was placed on paid leave and accused of having a personal relationship with her supervisor." [*Id.*]. Plaintiff claims she reported this allegedly "retaliatory treatment" to the EEOC via email. [*Id.* at ¶ 26].

Although she was allowed to return to work on January 3, 2024, Plaintiff further alleges that she still had to work with her supervisor and that Harbor Freight subjected *her* to "extra scrutiny" rather than correct *his* allegedly harassing behavior. [*Id.* at ¶¶ 27–28]. Apparently, at some point during all of this, Plaintiff claims her supervisor received a promotion even though he continued to give her gifts, touch her inappropriately, and make remarks towards her. [*Id.* at ¶ 28]. For example, on February 16, 2024, Plaintiff emailed human resources to report receiving an "unsolicited and unwelcome" Valentine's Day card from her supervisor. [*Id.* at ¶ 30]. In addition to voicing her frustration over the card, she states that she still saw a need to express concerns about continuing to work with him. [*Id.*]. "Within the following week," Plaintiff alleges that Harbor Freight attempted to force her transfer to another store location 45 minutes from her home and told her that if she didn't transfer, she would effectively resign. [*Id.* at ¶¶ 31–32]. Plaintiff refused to transfer, so Harbor Freight fired her on February 25, 2024. [*Id.* at ¶¶ 33–34].

Many of those factual allegations, because of how tailored and streamlined

Plaintiff makes her amended complaint, might be thought of as irrelevant fluff. *See, e.g.*, [*Id.* at ¶ 36]. But again, discussion of those allegations helps discern the differences between Plaintiff's EEOC charges. So, in very large way, they *do* help guide the analysis on the timeliness issue before the Court. That said, let's get to that issue.

### DISCUSSION

Based on her allegations, Plaintiff states in her amended complaint that she asserts "claims" pursuant to Title VII "for relief against retaliation and discrimination in employment for participating in protected equal employment opportunity activity." [*Id.* at ¶ 5]. However, notwithstanding three opportunities to present her case as she wants it, Plaintiff only lists *one* cause of action—retaliation. *Compare* [*id.* at ¶ 36], *with* [Doc. 1, pp. 3–4]; *see also* [Doc. 8]. She does not specifically assert causes of action for either quid pro quo sexual harassment or harassment based on a hostile work environment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998) (noting, quid pro quo cases and cases involving hostile work environments are the two types of sexual harassment cases). "[Quid pro quo sexual harassment occurs] if the *employee's* refusal to submit to a supervisor's sexual demands results in a tangible employment action." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1232 (11th Cir. 2006) (quoting *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004)). Hostile work environment sexual harassment, on the other hand, involves conduct of "bothersome attentions or sexual remarks that are sufficiently severe or pervasive" such that they unreasonably interfere

with an individual's work performance or create an intimidating, hostile, or offensive working environment. *Ellerth*, 524 U.S. at 753; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). Hostile work environment sexual harassment differs from quid pro quo harassment in that the harassment under the former is not directly linked to the grant or denial of an economic or tangible job benefit. *Meritor Sav. Bank*, 477 U.S. at 64–65.

While the Court expresses no opinion on whether Plaintiff's allegations plausibly state causes of action for either quid pro quo or hostile work environment sexual harassment, she was afforded—and took advantage of—opportunities to file a recast complaint and an amended complaint. [Doc. 8]; [Doc. 18]. Even recognizing the fact that she's pro se, the liberal construction required for her allegations doesn't give the Court license to serve as *de facto* counsel and sua sponte rewrite her amended complaint for her such that it pleads those causes of action. *McFarlin v. Douglas Cnty.*, 587 F. App'x 593, 595 (11th Cir. 2014) (citing *GJR Invs., Inc.* 132 F.3d at 1369); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007); *Lott*, 350 F.3d at 1160. Whether the required liberal construction stretches so far as to permit pro se litigants to simply mention phrases or buzzwords surrounding a particular legal theory or area of law, as Plaintiff as done here, the Court thinks *that* much leniency cuts against what Rule 8 requires for plausibly stating a cause of action. *Downing v. Howard*, No. 5:25-cv-00277-TES, 2025 WL 2713733, at *4 (M.D. Ga. Sept. 23, 2025). Plaintiff chose to proceed with a single cause of action, and it is not the Court's obligation to insert any additional causes of action on

11

her behalf when she clearly did not want them to exist.[1] That said, Harbor Freight argues that Plaintiff's retaliation claim "cannot go any further" because of the limitations period mandated by § 2000e-5(e)(1). [Doc. 20-1, p. 1].

### A.   Plaintiff's EEOC Charges

There are four charges that have been sporadically placed on the record for this lawsuit—Plaintiff's first charge; an amendment to that charge; a charge allegedly completed on August 21, 2024; and one completed on September 25, 2024. *See, in order*, [Doc. 20-2]; [Doc. 20-3]; [Doc. 22-2]; [Doc. 18-2]. Plaintiff signed and dated her first charge on December 11, 2023, but she alleges that she didn't file it with the EEOC until December 12, 2023.[2] [Doc. 20-2, p. 2]; [Doc. 18, ¶ 25]; *but see* [Doc. 20-2, p. 2 (stamped "received" on 12/11/23)]. Basing the December 2023 Charge on race, sex, and retaliation, Plaintiff states that she has "been subjected to a hostile work environment" by two female managers and that despite speaking to one of them "about how [she] felt targeted," "management and co-workers [became] more hostile towards [her]." [Doc. 20-2, p 2]. Plaintiff also discusses "ongoing sexual harassment" from her supervisor and how Harbor Freight "still required [her] to work closely with him" even after she'd complained about him. [*Id.*]. Then, on January 22, 2024, Plaintiff signed an amended

---

[1] In its motion, Harbor Freight points out that Plaintiff's amended complaint "identifies retaliation as the only cause of action," and Plaintiff doesn't argue to the contrary in her response brief. [Doc. 20-1, p. 3]; [Doc. 22]. In fact, she stresses that "she's pursuing relief solely for [Harbor Freight's] retaliatory termination following her protected activity during the EEOC investigation." [Doc. 22, p. 6 n. 1].

[2] The Court refers to this charge as the "December 2023 Charge."

12

charge, and the EEOC received it on January 24, 2024.[3] [Doc. 20-3, p. 2]. There, Plaintiff reiterated nearly verbatim what she included in the December 2023 Charge, but this time, she claimed, since filing the December 2023 Charge, Harbor Freight retaliated against her again. [*Id.*]; [Doc. 22, pp. 1–2].

Fast forward several months, to August 2024, and according to Plaintiff's amended complaint, while the January 2024 Charge was pending with the EEOC, she "initiated" a second charge on August 19, 2024.[4] [Doc. 18, ¶ 9]. In the August 2024 Charge, Plaintiff lists February 25, 2024, as the most recent date she thinks unlawful employment activity occurred. [Doc. 22-2, p. 1]. Additionally, Plaintiff tells the EEOC how Harbor Freight offered her $.38 more per hour to transfer to the other store location further from her home so that she and her supervisor would no longer have to work together. [*Id.*]; [Doc. 18, ¶ 31]. Plaintiff states that she informed Harbor Freight how transferring to that store wouldn't be financially feasible for her. [Doc. 22-2, p. 1]. In the end, Plaintiff refused to transfer, and a representative from human resources allegedly told Plaintiff that Harbor Freight "accept[ed] [her] resignation." [*Id.*]. Plaintiff, adamant that she "would never resign or quit [her] job," claims that the human resources representative raised her voice and stated, "[W]e thank you for your services and they will e[sc]ort [you] out." [*Id.*]. "At which time[,] [Plaintiff] was e[s]corted out [of] the

---

[3] The Court refers to this charge as the "January 2024 Charge."

[4] The Court refers to this charge as the "August 2024 Charge."

building after collecting [her] belongings." [*Id.*]. Plaintiff allegedly signed and filed the August 2024 Charge on August 21, 2024. [*Id.* at pp. 1, 3]. However, with respect to that charge she states that "the EEOC worked with [her] to refine the phrasing of her allegations" and *that's* what she "understood" to bring about "the finalized version of the charge" she signed on September 25, 2024.[5] [Doc. 22-2, p. 2]; [Doc. 18-2, pp. 1–2]. There, she gave a run through of her hire date and discharge date and reiterated that she "filed a previous EEOC [c]harge . . . in [December] 2023."[6] [Doc. 18-2, p. 1]. According to the September 2024 Charge, Plaintiff, once again, discussed how she "was discharged for refusing to transfer to [another store] location." [*Id.*]. Plaintiff digitally signed the September 2024 Charge on September 25, 2024. [*Id.* at p. 2].

As for the January 2024 Charge (which amended the December 2023 Charge), Harbor Freight argues that upon being issued a right to sue letter on September 17, 2024, for that initial round of charging, Plaintiff "never utilized her rights" within the proscribed 90-day window. [Doc. 20-1, p. 3]; *see* [Doc. 20-4, p. 2]. With no disagreement with Harbor Freight on that front, Plaintiff states that "she intended to pursue claims" related to the January 2024 Charge and "sought assistance from a local attorney" in October 2024. [Doc. 22, p. 6 n.1]. Although she "believed" that attorney "would timely

---

[5] The Court refers to this charge as the "September 2024 Charge."

[6] In the actual text of the September 2024 Charge, Plaintiff states that she "filed a previous EEOC [c]harge . . . in November 2023." [Doc. 18-2, p. 1]. However, as discussed above, Plaintiff's charges that precede the September 2024 Charge were filed in December 2023, January 2024, and August 2024. [Doc. 20-2, p. 2]; [Doc. 20-3, p. 2]; [Doc. 22-2, pp. 1, 3].

14

file a lawsuit on her behalf," Plaintiff admits "[t]hat did not occur, and the 90[-]day filing period expired." [*Id.*]. Easily enough, Plaintiff states that she seeks no relief based on her allegations from the January 2024 Charge, and that narrows the focus of the charges from four to two. [*Id.*].

### B. Harbor Freight's Motion to Dismiss

Title VII makes it unlawful for an employer "to discharge any individual" or "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits employers from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice" under Title VII "or because [s]he has made a charge" of discrimination. *Id.* at § 2000e-3(a). Before filing a lawsuit under Title VII, an employee must first exhaust the required federal administrative remedies by filing a charge of discrimination with the EEOC.[7] *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). When it passed Title VII, Congress established certain requirements that employees must follow for charges of discrimination and set time limits for when employment-related claims can be brought against employers. 42 U.S.C.

---

[7] Although "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court," it is, however, a "procedural prescription" that must have been complied with if an employer timely raises a concern with its compliance. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 398 (1982); *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 543 (2019).

§ 2000e-5(b) & (e). Yes, there are more requirements than what the Court discusses here, but for Harbor Freight's motion to dismiss, only three are relevant.

First, Title VII requires charges to be "in writing," made "under oath or affirmation," and completed "in such form as the [EEOC] requires." *Id.* Second, EEOC regulations state that a charge "shall be in writing and signed and shall be verified." *Wilkerson*, 270 F.3d at 1317 (quoting 29 C.F.R. § 1601.9 (2000)). And third, Title VII establishes time limits within which a charge of discrimination must be filed with the EEOC. 42 U.S.C. § 2000e-5(e)(1). A charge must be filed "within" 180 days "after the alleged unlawful employment practice occurred." *Id.* However, in certain "deferral" states where "a State or local agency" has "authority to grant or seek relief from [an allegedly unlawful employment] practice," an employee has 300 days "after the alleged unlawful employment practice occurred" to file a charge with the EEOC. *Id.* Georgia is a non-deferral state, so the 180-day limitations period applies. *Wilkerson*, 270 F.3d at 1317 ("For a charge to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act."); *see also Gray v. Rooms To Go Furniture Corp. of Ga.*, No. 5:24-cv-00227-TES, 2024 WL 4871727, at *4 (M.D. Ga. Nov. 22, 2024), *reconsideration denied*, No. 5:24-cv-00227-TES, 2024 WL 4953806 (M.D. Ga. Dec. 3, 2024).

Filing a charge with the EEOC is an employee's first step in exhausting Title VII's statutorily required administrative remedies. *Wilkerson*, 270 F.3d at 1317; *Jordan v. City of Montgomery*, 283 F. App'x 766, 767 (11th Cir. 2008) (per curiam). Exhaustion serves one

16

primary purpose: to allow the EEOC to "have the first opportunity to investigate the alleged discriminatory practices [so that it can] perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). It has long since been the rule in the Eleventh Circuit that the 180-day period starts running from the date of a "discrete act"—the date the employee knows or reasonably should have known that she has been retaliated against. *Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1545 (11th Cir. 1988); *Nat'l R.R. Passenger Corp.*, 536 U.S. at 105 ("We hold that [Title VII] precludes recovery for discrete acts of . . . retaliation that occur outside the statutory time period."). Only those claims arising within 180 days of the filing date of a charge are actionable. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (citing *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115); *see also Nat'l R.R. Passenger Corp.*, 536 U.S. at 115 ("All prior discrete [retaliatory] acts are untimely filed and no longer actionable."). Untimely claims are barred and fail to state a claim upon which relief could be granted. *Gray*, 2024 WL 4871727, at *4 (citing *Joe's Stone Crabs, Inc.*, 296 F.3d at 1271).

Harbor Freight directs the Court to the September 2024 Charge to support its arguments for why Plaintiff's retaliation claim is untimely. [Doc. 20-1, pp. 3, 5]; *see also* [Doc. 20-1, p. 6 n.7 ("Harbor Freight . . . assumes Plaintiff relies on [the September 2024 Charge] to bring forth the present action.")]. Plaintiff *signed* that charge on September 25, 2024, but unlike the January 2024 Charge and the alleged August 2024 Charge,

17

there's nothing (aside from the date below her digital signature) indicating when she actually *filed* it with the EEOC. *See, e.g.*, [Doc. 20-3, p. 2 (electronic receipt stamp of "Jan 24, 2024")]; [Doc. 22-2, p. 3 (charge history noting, "Agreement completed" as of "2024-08-21")]. For no other reason than Plaintiff's arguments in response to Harbor Freight's reliance on the September 2024 Charge, the Court assumes, for purposes of *this* motion, that the date Plaintiff digitally signed the September 2024 Charge—September 25, 2024—is the same date she filed it with the EEOC. [Doc. 18-2, pp. 1–2]. Other than the dates Plaintiff uses to state her charge, September 25, 2024, is the only date listed on the September 2024 Charge. [*Id.* at p. 2]. Thus, for Plaintiff's retaliation claim to be considered timely, the employment action that formed the basis of the September 2024 Charge must have occurred on or after March 29, 2024.[8] *See* 42 U.S.C. § 2000e-5(e)(1). Again, in her response brief, Plaintiff clearly states that she is "pursuing relief solely for [Harbor Freight's] retaliatory *termination* following her protected activity during the EEOC investigation."[9] [Doc. 22, p. 6 n. 1 (emphasis added)]. With Plaintiff's allegation in her amended complaint that she "was separated from her position . . . on February 25, 2024," her retaliation claim, going off the September 2024 Charge, is unequivocally

---

[8] Harbor Freight's calculation for the 180-day period on the September 2024 Charge is wrong. In its motion, Harbor Freight, relying on the September 2024 Charge, argues that Plaintiff's retaliation claim is time-barred because "her termination (and all . . . other alleged retaliatory events) occurred prior to March 13, 2024." [Doc. 20-1, p. 4]. March 13, 2024, was 196 days before September 25, 2024.

[9] Termination of employment is a discrete adverse employment act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

time-barred since it falls outside the 180-day period. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 105; [Doc. 18, ¶ 34]; *see also* [Doc. 18-2, p. 1 ("I was discharged on February 25, 2024.")].

Plaintiff, however, argues that Harbor Freight, in trying to dismiss her retaliation claim, relies on the wrong EEOC charge. [Doc. 22, p. 3]. According to her, the August 2024 Charge "is the operative filing for purposes of Title VII's 180[-]day limitations period." [*Id.* at p. 2]. Attached to her amended complaint, Plaintiff relies on what appears to be a blank email—void of any subject line or message text—to the EEOC dated August 19, 2024. [Doc. 18-1, p. 1]. Harbor Freight frames this blank email as Plaintiff's attempt to prove she did *something* with the EEOC prior to the September 2024 Charge. [Doc. 20-1, p. 5]. With laser focus on why Plaintiff included this blank email, Harbor Freight argues that she amended her recast complaint purely "to include the date she allegedly reached out to the EEOC" only "*[a]fter*" it submitted its first motion to dismiss. [Doc. 20-1, p. 5 n.6 (emphasis added)]; [Doc. 16]. Such an argument, however, makes much ado about nothing. Remember, an employee's failure to exhaust is an affirmative defense, and as such, an employee isn't required to negate it with particularity in a complaint. *Jackson*, 678 F.2d at 1010 (quoting Fed. R. Civ. P. 9(c)); *La Grasta*, 358 F.3d at 845. Whether Plaintiff merely amended her recast complaint to include August 19, 2024, to show a point of contact with the EEOC to ward off an exhaustion defense is, for now, irrelevant. What's important or relevant now is that

19

Harbor Freight raised the defense, and Plaintiff is attempting to meet her burden to overcome it. Once an affirmative defense based upon an employee's supposed failure to properly exhaust is timely raised, the employee bears the burden of showing proper exhaustion. *Green v. Union Foundry Co.*, 281 F.3d 1229, 1234 (11th Cir. 2002) (citing *Jackson*, 678 F.2d at 1010); *see also Fort Bend Cnty.*, 587 U.S. at 543–44. So, it appears Plaintiff included the blank email to assist with meeting her burden of showing proper exhaustion. Harbor Freight, though, argues that it "is inadequate, and cannot, itself, replace the filing date" of the September 2024 Charge. [Doc. 20-1, p. 5].

While the Court is easily inclined to agree that the blank email by itself doesn't really help Plaintiff meet her burden, it must be viewed in connection with other things. First, Plaintiff's alleges in her amended complaint that she "initiated" another charge on August 19, 2024. [Doc. 18, ¶ 9]. Second, Plaintiff attached what she claims is the August 2024 Charge to her response brief. [Doc. 22-2]. No, she didn't specifically discuss the August 2024 Charge in or attach it to her amended complaint, but again she's simply trying to meet her burden of showing proper exhaustion since Harbor Freight brought it up. *Union Foundry Co.*, 281 F.3d at 1234; *see* [Doc. 20-1, p. 6 (Harbor Freight's argument that "[b]ased on the four corners of Plaintiff's [amended complaint], the [September 2024 Charge] dated September 25, 2024, measures the 180-day lookback period")]; [Doc. 18, ¶ 9]. According to the filing history for the August 2024 Charge, which Plaintiff purports as having come directly from the EEOC because of the EEOC

20

seal on the bottom of the page, she filed that charge on August 21, 2024. [Doc. 22-2, p. 3]. In that charge, Plaintiff states that the most recent date she thinks unlawful employment activity occurred was February 25, 2024—the date Harbor Freight fired her. [*Id.* at p. 1]; [Doc. 18, ¶ 34]. So, with a quick calculation of the 180-day limitations period, Plaintiff's retaliation claim is timely if the employment action that formed the basis of the August 2024 Charge occurred on or after February 23, 2024. *See* 42 U.S.C. § 2000e-5(e)(1). And there you have it.

Given the apparent timeliness of Plaintiff's retaliation claim, Harbor Freight makes several arguments in its reply brief as to why the Court should essentially disregard the August 2024 Charge Plaintiff attached to her response brief. [Doc. 24]. First, Harbor Freight contends that "[o]n a motion to dismiss, a district court's review is 'limited to the face of a complaint[.]'" [*Id.* at p. 2 (quoting *Gladney ex rel. Gladney v. Consumers Credit Union*, No. 23-13959, 2024 WL 2797914, at *4 (11th Cir. May 31, 2024))]. And, along with a complaint, district courts, in ruling on a motion to dismiss, may consider "any [undisputed] documents [a complaint] refers to that are central to the claims alleged." *Gladney*, 2024 WL 2797914, at *4; *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Although Plaintiff's amended complaint doesn't discuss the August 2024 Charge in detail, her amended complaint *does* include the required allegation that "all conditions precedent have occurred or been performed." *Jackson*, 678 F.2d at 1010 (quoting Fed. R. Civ. P. 9(c)). In her amended complaint, Plaintiff alleges

that "[a]ll conditions precedent to invoke the jurisdiction of this Court under Title VII have been met." [Doc. 18, ¶ 10]. That—and her allegation that she "initiated" another charge on August 19, 2024—could easily be seen as a loose reference to the August 2024 Charge. [*Id.* at ¶ 9]. While her allegation is admittedly broad, it *could* be a reference to the August 2024 Charge, and it's all the law and Federal Rules required her to plead. Fed. R. Civ. P. 9(c).

Second, Harbor Freight faults Plaintiff for not using "her [response] [b]rief to address how her [amended complaint]—*as is*—satisfies the statute[] of limitations period for her retaliation claim." [Doc. 24, p. 2]. Harbor Freight's dismissal efforts time and time again harp on how Plaintiff could have included "additional facts to cure the deficiencies" in her amended complaint, how she could "have detailed [certain] allegations in her [amended complaint]," and how she "introduce[d] new facts" via her response brief "that were not included in her [amended complaint] to save" her retaliation claim. [*Id.* at pp. 2–3, ]; *see also* [Doc. 24, p. 3 n.2]. These arguments, though, don't conform with the relevant law. Stripped down to the crux of its point, Harbor Freight seeks a ruling that requires employees to allege more than what Rule 9(c) mandates when it comes to pleading exhaustion. Again, an employee doesn't have to *prove* or negate exhaustion in a complaint, she only had to plead it's "been performed." Fed. R. Civ. P. 9(c); *La Grasta*, 358 F.3d at 845.

To buttress its second point, Harbor Freight argues that no plaintiff, pro se or

represented, can use a response brief to "cure deficiencies" or "fill gaps" in a complaint. [Doc. 24, p. 2 (citing *Gladney*, 2024 WL 2797914, at *4)]. The Court quite agrees. However, that proposition concerns the far-from-rare occasion when a plaintiff sprinkles factual allegations throughout a response brief in hopes of "filling gaps" in a complaint so that the complaint states a plausible claim in accordance with Rule 8, *Twombly* and *Iqbal*'s pleading standards. Fed. R. Civ. P. 8; *Twombly*, 550 U.S. at 555–57 (2007); *Iqbal*, 556 U.S. at 677–87. In other words, as Harbor Freight correctly contends, no plaintiff can use a response brief to insert additional factual allegations that speak to the *merits* of a particular cause of action that ought to have been included in a complaint to begin with. The proper course of action there is, of course, some effort to amend the complaint. *My24HourNews.com, Inc. v. AT&T Corp.*, 791 F. App'x 788, 802 (11th Cir. 2019) ("Filing a motion is the proper method to request leave to amend a complaint.").

What we have here, though, a concern about exhaustion, is vastly different. *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008) (discussing how matters concerning exhaustion of administrative remedies do not generally deal with the merits of a cause of action); *Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 425 (11th Cir. 2010) (holding, "facts relating to whether [an employee] exhausted administrative remedies do not bear on the merits of [a] retaliation claim[]"). Rule 9(c) requires what it requires, and Plaintiff, in her efforts to address Harbor Freight's timely raised defense is doing what she believes is necessary to save her retaliation claim. Now, if she also believes it's

23

necessary for her to further amend her complaint (with either Harbor Freight's written consent or the Court's leave) to include what Harbor Freight *prefers* her to have in her operative pleading, that's completely up to her. Fed. R. Civ. P. 15(a)(2).

As should be clear by now, failure to exhaust is an affirmative defense for an alleged violation of Title VII, and employees are not required to specially plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 216 (2007) (discussing exhaustion under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)); *Wilkerson*, 270 F.3d at 1317; *see also Tillery*, 402 F. App'x at 425 (holding, the general exhaustion principles under the Prison Litigation Reform Act also apply equally to Title VII exhaustion). In the grand scheme of things, both parties are *acting* in concert with the law in this case: Harbor Freight has timely raised the affirmative defense of exhaustion, and Plaintiff is trying to demonstrate how it doesn't defeat her retaliation claim. *Union Foundry Co.*, 281 F.3d at 1234; *see also Bloodworth v. Colvin*, 17 F. Supp. 3d 1245, 1253 (N.D. Ga. 2014) (*for the limited proposition* that "[t]he plaintiff . . . bears the burden of proof when the defendant particularly denies [either via an answer or motion to dismiss] that the conditions precedent to suit have been satisfied").[10] Since Rule 9(c) requires so little, *yes,* an employee gets to come forward with additional facts when an

---

[10] The Court limits its reliance on *Bloodworth v. Colvin* because it states that "in the Eleventh Circuit, administrative exhaustion is a jurisdictional prerequisite to Title VII actions." 17 F. Supp. 3d 1245, 1250 (11th Cir. 2019) (citing *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999)). We know now, that is incorrect given the Supreme Court's ruling in *Fort Bend County* that Title VII's charge-filing requirement is *not* jurisdictional. *See Hogan v. Sec'y, U.S. Dep't of Veterans Affs.*, 121 F.4th 172, 174 (11th Cir. 2024) (citing *Fort Bend Cnty.*, 587 U.S. 543–44).

employer asserts failure to exhaust as a defense. In this Court's view of applicable Eleventh Circuit precedent, since Harbor Freight is so adamantly trying to kick Plaintiff's retaliation claim on grounds that it's time-barred, she gets the opportunity to explain (in more detail than what Rule 9(c) required of her) *how* she properly exhausted it before the EEOC. *Jackson*, 678 F.2d at 1010; *Union Foundry Co.*, 281 F.3d at 1234.

Third, and consistent with the Court's standard for the incorporation-by-reference doctrine discussed above, Harbor Freight suggests that the Court cannot rely on what Plaintiff presents as the August 2024 Charge because it disputes its authenticity. [Doc. 24, p. 4 (citing *Day*, 400 F.3d at 1276)]. Once more, under the incorporation-by-reference doctrine, district courts may consider evidence in passing on a motion to dismiss without converting the motion into one for summary judgment if "the plaintiff refers to certain documents in the complaint," those documents are "central to [a] claim," and the documents' contents are undisputed. *Baker*, 67 F.4th at 1276 (quoting *Horsley*, 304 F.3d at 1134). "Undisputed," in this context, means that the authenticity of the evidence is not challenged. *Id.* (citing *Horsley*, 304 F.3d at 1134).

In disputing the authenticity of the August 2024 Charge, Harbor Freight says when it contacted the EEOC, the forms the EEOC provided concerning this lawsuit are inconsistent with what Plaintiff uses to save her retaliation claim. [Doc. 24, p. 4]. Not to put too fine a point on it, but Harbor Freight's saying that the EEOC has no record of what Plaintiff puts forth as the August 2024 Charge. [*Id.* at p. 5 ("Indeed the EEOC

confirmed that it has no record of the [August 2024 Charge] Plaintiff provided in her [response] [b]rief.")]. Now, what the EEOC *did* provide with respect to the August 2024 Charge was a mostly blank charge. *See, e.g.*, [Doc. 24-2, p. 2]. It only included Plaintiff's email address; Harbor Freight's name; and a charge number, 410-2024-12325. *See, e.g.*, [*id.*]. Plaintiff's submission, though—or her version of the August 2024 Charge bearing the same charge number, 410-2024-12325—was fully completed, signed, and filed with the EEOC on August 21, 2024. *See, e.g.*, [Doc. 22-2, pp. 1, 3]. There's even a printout of what Plaintiff offers as a filing history from the EEOC showing that she signed and filed a completed August 2024 Charge on August 21, 2024. [*Id.* at p. 3 (showing "Status" as "Signed")]. Yes, "a judge may make factual findings necessary to resolve motions to dismiss" in certain instances. *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). Even then, where a Rule 12(b)(6)-based motion predicated on an employee's lack of exhaustion "is treated as a matter in abatement and not an adjudication on the merits," it is only "proper for a judge to consider facts outside of the pleadings and to resolve factual disputes" when "the parties have [had] sufficient opportunity to develop [the] record." *Id.* Suffice it to say, something isn't lining up with what Harbor Freight says the EEOC *doesn't* have and what Plaintiff says the EEOC *should* have.

That's why the Court will not dismiss Plaintiff's sole retaliation claim on this current record. Too much remains in the air regarding the veracity of what Plaintiff offers as a fully completed August 2024 Charge. If Plaintiff's submissions about what

the EEOC should have with respect to her version of the August 2024 Charge are correct, then her relation claim is timely. If the EEOC's records, on the other hand, truly consist of what Harbor Freight has put before the Court, then the September 2024 Charge is the controlling charge, and as discussed above, Plaintiff's retaliation claim under that charge is time-barred. 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp.*, 536 U.S. at 105.

In short, because of what's been placed on the record, resolution of the timeliness issue before the Court is more akin to a summary-judgment evaluation. Assuredly, the Court recognizes that because "exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits," the defense "is not ordinarily the proper subject for a summary judgment." *Id.* at 1374–75; *but see Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014) (instructing district courts to convert motions to dismiss into motions for summary judgment when they, like here, need to consider "materials outside of the complaint"); *Bryant*, 530 F.3d at 1379 (Wilson, J., concurring in part and dissenting in part). However, the Eleventh Circuit deals with Title VII exhaustion-based defenses under a summary-judgment lens all the time. *See, e.g., Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345–46 (11th Cir. 2022); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 846 (11th Cir. 2000); *Manning v. Carlin*, 786 F.2d 1108, 1108 (11th Cir. 1986); *Jordan*, 283 F. App'x at 767–68; *Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 840 (11th Cir. 2005). So, even though any forthcoming motion centered on

27

exhaustion is likely to include evidence, the Court thinks it's safe to bring it under Rule 56. *Cf. Bryant*, 530 F.3d at 1379 (Wilson, J., concurring in part and dissenting in part).

Throughout its reply brief, Harbor Feight talks about how Plaintiff inserted "additional facts" on the record via her response brief, well, Harbor Freight's guilty of that, too. [Doc. 24, pp. 2–3]. Harbor Feight placed additional evidence on the record via its reply brief—evidence that Plaintiff hasn't had any opportunity to respond to. For example, Harbor Freight provided emails between it and the EEOC and a declaration from one of its attorneys to try and defeat Plaintiff's retaliation claim. *See, e.g.*, [Doc. 24-1]; [Doc. 24-5]. Those things are nowhere to be found in its opening brief. Yes, Plaintiff could've sought leave to file a surreply to present arguments against Harbor Freight's evidence, but she didn't. *See* LR 7.3.1C, MDGa. That's why the Court is going to afford the parties a brief period of limited discovery to gather and present their respective evidence on the issue of Plaintiff's exhaustion of her termination-based retaliation claim from February 25, 2024. [Doc. 18, ¶ 34]; *see also* [Doc. 22, p. 6 n.1].

## CONCLUSION

The Court **DENIES** Harbor Freight's motion to dismiss and will soon issue a Scheduling and Discovery Order.

**SO ORDERED**, this 11th day of May, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**

28